### 1186.  JOHNSON *v.* RYCROFT.

1. The nonsuit was proper, because, admitting all the facts proved and all reasonable deductions from them, plaintiff ought not to recover.

2. (*a*) In order to bind the promisor, the written promise of one who undertakes to pay the debt of another must contain a clear statement of the agreement, indicate knowledge of the amount promised to be paid, and show who is the promisee, as well as the promisor.

(*b*) The terms of a promise to assume the debt of another can not be settled by parol.

(*c*) The promise to pay the pre-existing debt of another is nudum pactum, unless some benefit be secured to the debtor or to the promisor.

Complaint, from city court of Dawson—Judge Edwards.  April 20, 1908.

Submitted July 15,—Decided July 25, 1908.

*Raines & Gurr,* for plaintiff.  *H. A. Wilkinson,* for defendant.

RUSSELL, J.  The plaintiff in error excepts to the grant of a nonsuit.  It appears perfectly plain to us that the nonsuit was properly granted.  Johnson sued Rycroft for $175.86 and interest. The petition alleged, that during 1906 he had in his employ one Charley Coffee, as a laborer, and advanced to him money and other items, which exceeded his labor by the sum of $175.86, as shown by an itemized account attached to the petition; that on November 29 Rycroft wrote a letter to the plaintiff, agreeing to pay Coffee's account if the plaintiff would write and let him know the amount; and the plaintiff notified him of the amount by return mail, and afterwards looked to him for payment, but he refuses to pay the same.  A copy of Rycroft's letter is attached to the petition.  The defendant answered by a general denial of each paragraph of the petition.

It is insisted, in the first place, by the plaintiff in error that a nonsuit should not have been granted, because he proved his case

as laid. We think that he failed in this particular. Placing the most favorable construction upon his evidence with relation to the letter he wrote in reply to Rycroft's letter, he certainly did not prove that Rycroft was indebted to him more than $150; because he did not require more than that at Rycroft's hands. It would hardly be reasonable to assume that the defendant was different from all the rest of mankind, in his desire to pay more, in order to put himself in the debtor's shoes, than was demanded of him. In Johnson's letter to Rycroft, as testified to by him, he himself said that he would take $150; yet he sued for $176.85. It is not necessary, however, to pass upon that point, because the plaintiff in error asserted that his action did not depend upon any offer of Rycroft to buy his account against Coffee, but that the suit is based wholly upon the promise to pay the debt of another. This being true, we have no hesitation in approving the ruling of the trial judge, that no such promise was proved as would authorize a recovery.

The promise in writing, relied upon, must depend upon Rycroft's letter. It is as follows: "I have learned where Charley Coffee is. What does he owe you, and what will you take for it? I will pay it and risk getting him to work with me. Let me hear from you by return mail, before he gets further off." It is manifest that the intention of the writer was to ascertain, in the first place, what amount Johnson would take,—to inform himself what he would have to pay. The words "I will pay it," taken alone, might lend color to the claim of the plaintiff in error, that it was an unequivocal promise to pay any sum, no matter how large, that Johnson might write him that Coffee owed him. To show that Rycroft did not mean to promise to pay an account of several thousand dollars for an ordinary laborer (in case that Johnson had written to him that such was the amount of the indebtedness), and to indicate clearly what was in his mind in using the language, "I will pay it," the sentence which immediately precedes this alleged promise is of unusual significance. "What does he owe you, and *what will you take for it?*" It must be evident to any one that Rycroft intended to be governed more by Johnson's statement as to what he would take for Coffee's account than by the amount that Coffee might owe Johnson. And to show that this was plain to Johnson, he replied, by letter to Rycroft, that he would take

$150 for a $175 claim. If, then, the plaintiff's suit is for recovery of the amount of Coffee's debt, on Rycroft's promise to pay it, his proof, on the contrary, shows an offer to sell the account for $150. When this offer was made, Rycroft had the option of either accepting or declining the offer. By absolute silence and failure to reply to Johnson's letter, he declined to pay the $150 for the account; and no contract resulted between the parties. This is the only rational construction of the evidence; and the court properly construed it. The contention of the plaintiff, however, is, that the silence of Rycroft and his failure to reply to his letter, in which he told him the amount of Coffee's indebtedness to him, is only evidence of refusal to pay an obligation he had already assumed; that all that was necessary upon his part, in order to complete the contract by which Rycroft would be bound for Coffee's debt, was that he should inform Rycroft of the amount of the debt. This makes no material difference. Rycroft's obligation to pay Coffee's debt, if it existed at all, must have its origin in the written promise to pay it. So far from Rycroft's knowing the amount he was assuming at the time he made the alleged promise, the very letter shows that he was inquiring as to that point. Therefore the amount was lacking, in Rycroft's promise. When he said he would pay it, what amount was he to pay? All of the terms of the contract in this case had to be supplied by parol evidence; consequently the contract can not be enforced. Parol evidence was inadmissible for this purpose. Civil Code, §2693, par. 2.

Furthermore, the case is absolutely controlled by the decision in *Davis* v. *Tift*, *70 Ga.* 53 (2): "A promise to pay the pre-existing debt of another, without any detriment or inconvenience to the creditor, or any benefit secured to the debtor in consequence of the undertaking, is a mere nudum pactum." There was no consideration whatever for Rycroft's promise, even if it be construed to be unconditional. The plaintiff perhaps attempted to supply this defect by evidence; for it may be gathered that perhaps, by Rycroft's payment of the debt, Coffee would escape a prosecution for abandoning his contract. If, however, it was the intention of the plaintiff to show that Rycroft was guilty of violating the labor-contract law, the evidence fell far short of what would be necessary. Nothing more is shown than that Coffee made a contract to work on a turpentine farm, and left before the contract

expired. Neither the time for which the contract was made was stated, nor what, if anything, was to be paid Coffee, nor that he did not have good cause for quitting. These material points are entirely absent from this record. There is not a scintilla of evidence that either Coffee or Rycroft would have derived any benefit from Rycroft's promise to pay Coffee's debt.

*Judgment affirmed.*